Court, Ms. Lange. In the warrant context, a test falls to a neutral and attached judicial officer to make an independent probable cause determination. A judicial officer may not simply ratify or rubber stamp the conclusions of others. But in this case, that is exactly what the judicial officer did. And we know that he did so for two reasons. First, the government did not contain a substantial basis on which the judicial officer could make a probable cause determination. First, probable cause turned on an investigative technique. That investigative technique was unique to FreeNet, the software at issue in this case. That investigative technique alone identified Alden Dickerman as an individual who likely requested the 69 blocks at issue referenced in the warrant affidavit. That investigative technique also alone distinguished Mr. Dickerman from every other FreeNet user whose IP address was requesting those same blocks at the same time. And that investigative technique alone formed the basis of law enforcement's request to enter Mr. Dickerman's home to search and seize his computers. That investigative technique was not explained in the affidavit. That investigative technique was not described in the affidavit. That investigative technique was not mentioned or referenced in the affidavit. Rather, the affidavit simply offered the judicial officer a mere conclusion. The FreeNet itself is described, correct? I must say I understood it much better after reading the briefing and the transcripts, but it does describe FreeNet to a certain degree. FreeNet is described, but it is not described as the investigative technique. In fact, you would not know from reading that affidavit that there was a particular investigative technique that was used that was only disclosed through the evidentiary hearing that was held. The conclusion that was contained in the affidavit was simply this. The number and timing of the requests was significant enough to indicate the IP address was the apparent original requester of the file. The affidavit did not explain how that conclusion was reached in order to provide the judicial officer with any basis to evaluate it. The affidavit did include two facts, but they did not help to explain the basis of the conclusion or provide the judge with any ability to evaluate it either. Fact one, streams of requests for blocks can be evaluated to determine if a given IP address is the apparent original or primary requester of the blocks. Fact two, on April 2nd between 1108 and 1110 p.m., a computer at a given IP address requested 69 blocks of a known file of child pornography. As to the first fact, the streams of requests for blocks could be evaluated whether through a scientific method such as the network investigative technique or through numerology or through a psychic reading. As to the second fact, the affidavit failed to explain why the fact is meaningful. That is how in any way it distinguished Mr. Dickerman's IP address from all other IP addresses that were requesting those same blocks at the same time. Without more than those two facts and that one conclusion, the magistrate judge could not rely on any basis, let alone substantial basis within the affidavit itself to make an independent determination about whether the IP address associated with Mr. Dickerman was any more likely than any other IP address to have been the actual original requester of the 69 blocks referenced in the warrant affidavit. That left the magistrate judge with one option rather than to ratify or rubber stamp the conclusion of law enforcement or to reject it. Well, you used the word rubber stamp, but the cases I see on that require sort of a higher standard, I think, than this case here. What I mean by that is in one case we said, well, the magistrate admitted to not even reading the whole affidavit. In another case, a magistrate actually went along and helped investigate the warrant. It doesn't seem to rise to that here. I mean, you're just saying there should have been more information. So does it meet that rubber stamp standard? Do you have a case? Well, I think I'm saying two things. One thing that I'm saying is that the information supplied in the affidavit was insufficient to provide a substantial basis to the magistrate judge or the judicial officer. But I am also saying, as I say in the brief, that the judicial officer himself fundamentally admitted that he did not understand the basics of the affidavit and certainly didn't understand law enforcement's claim to probable cause, which he could not have understood because it wasn't included in the warrant affidavit. That aside, I think the dictionary definition of rubber stamp is simply to approve without due consideration or thoughtfulness. Here, the magistrate judge admitted two things. He understood the description of the files, that there were 17 files that contained images of child pornography, but he didn't understand at all the workings of Freenet, and he couldn't have understood the basis of the network investigative technique because it wasn't described in the first place. In fact, what he said was, I understood the description, but the rest of it was Greek to me. One would hope that a magistrate judge, a judicial officer, or anyone approving a warrant would be capable of comprehending the affidavit and capable of evaluating it. When the magistrate judge, the judicial officer, whomever it might be, indicates that they could not understand it, they ought to do one thing, ask more questions, ask law enforcement to go back and redraft it or reject it outright. But I don't think he said that he didn't understand. He did say it's Greek to me, but I don't think he ever admitted to not understanding the whole thing. And if you look at this, I mean, just as a practical matter, I think you would be hard pressed to find a judicial officer that would understand every aspect of Freenet, that would understand exactly how they did this. And this investigative technique is very technical, but you can understand the broad outlines. And we're all generalists, and so isn't that good enough if you look at the broad outlines and say, you know what? This sounds like this guy probably did it. Sure, when the broad outlines are included in the affidavit, but they were not. So I do not expect magistrate judges or judicial officers to be technical experts, and I'm certainly not one myself. I have no advanced degree in computer engineering. My major was in philosophy, and I have a law degree, so I am a generalist to say the least. However, there was no description of the network investigative technique or its functioning, so there was no way for the judge to even evaluate whether or not that technique worked and supplied a probable cause basis. The government could have solved that problem quite simply. It could have attached an affidavit from Professor Brian Levine, the individual who developed the network investigative technique at the University of Massachusetts at Amherst. Or it could have simply, forgive me. Well, they do say in paragraph five, however, that Special Investigator Becker began running copies of Freenet that had been modified for law enforcement to log the IP address key and date and request. So isn't that enough to tell them that they were using a specialized computer program to identify the IP addresses? Do you have to get into how the program works, what the computer architecture is? I'm not sure you need that for a search warrant application. So I would agree that that starts to describe the process, but what's needed in any case where a independent evaluation of probable cause is some way to understand the claim that probable cause exists. And here that claim really turned on one feature of the network investigative technique, and that is a number. And that number is called even share. You don't need to know what even share means. You just need to know there's a number. And that number is determined based on two variables, the total number of blocks involved or that comprise or constitute a file, and the total number of peers or IP addresses that are requesting those blocks at the same time. You take the former and you divide it by the latter. That yields a number. According to Professor Levine, any IP address that matches or exceeds that number must be the original requester because only the IP address associated with the original requester will meet or exceed that this particular network investigative technique has been peer reviewed and tested. And when he's tested it, he's yielded a true positive rate approaching 100% and a false positive rate approaching no more than 3%. So all that anyone needs to know is that there is this number. The number is called even share. You don't even need to know about even share. And that in this you find is that Mr. Dickerman's IP address exceeded that number by 501%. So if only the original requester would meet or exceed that number and Mr. Dickerman's IP address and the request associated with it exceeded it by 501%, you can then simply say, okay, that's probable cause. But that information was nowhere included in the affidavit. That does not require an advanced degree to understand. It simply requires the law enforcement officer to exercise a little bit of effort to find a way to describe simply this process that might be complicated, but that the judge does not have to know all about. But he does have to evaluate whether there's probable cause. And if probable cause turns on a single number, then the judge must have some capacity to or exceed it. That would not take an inordinate amount of energy or brain power to figure out. If I can figure that out and understand it, I have no doubt that the average person can do the same, given that I have no expertise in that area. The magistrate or the judicial officer did say that he had experience in issuing or signing warrant applications in peer-to-peer context. Is there anything about that that helps us understand whether he would have appreciated what was going on in here? In other words, if you just assumed Freenet was a simple, straightforward peer-to-peer, would you reach any improper conclusions here? Absolutely. So in the ordinary peer-to-peer, and again, I don't want this to sound like I, and certainly Ms. Lang knows about this too, has some expertise in this area that is beyond common understanding. The ordinary peer-to-peer program works quite simply. In the ordinary peer-to-peer program, I download files from other peers. Those files are stored on my hard drive, and they're typically placed into a shared folder. So any other user on the network can go ahead and search for files, and they can actually download them directly from my hard drive. So the typical law enforcement investigation, the images or the files or the videos are downloaded by law enforcement directly from the suspect's hard drive. The law enforcement officer can then go write a warrant. I've downloaded these images directly from someone's hard drive. Could someone assume that that's what happened here? Would there be a fair reading? In other words, if he's thinking peer-to-peer, would that be a fair reading that he thinks that that's what happened? No. Well, I think if anybody read closely and understood the affidavit, they would not think that's what happened because there's an explanation within the affidavit that Freenet is unusual and unique in that you have to evaluate requests. You can't get somebody by downloading the images or files from their hard drive. You have to look for people who are requesting files. Now, someone who didn't understand the affidavit could make that mistake, and I think that is the mistake the was that 17 images were discovered. 17 images were not discovered at the time he issued that warrant. All that was discovered at the time he issued the warrant was that someone with an IP address assigned to Mr. Dickerman's home had requested 69 blocks of a given file. That's all that was known. He thought it was known that 17 images were discovered. Not so. And absent from the warrant affidavit anywhere was any way to distinguish the requests associated with Mr. Dickerman's address from the requests associated at the same time for the same blocks from a host array of innocent Freenet users, and yet a warrant was authorized to go into Mr. Dickerman's home, search through his computer, seize them from the home, and initiate a case against him. Why doesn't good faith apply? Is it your rubber stamp argument? Is that even if it lacks probable cause that you're saying Leon doesn't apply because there's not a neutral and detached magistrate, a.k.a. he was... So two things, yeah. So with respect to a simple straightforward ratification of rubber stamp argument, yes, the good faith exception does not apply in that context. That is an exception, and I think when you take a look at Leon, Leon cites to Aguilar as an exemplar of a rubber stamp case, and Aguilar did not in any way, shape, or form involve collusion, coordination with law enforcement, with a judicial officer, and the judicial officer did not act as an adjunct of law enforcement in that case. So the law enforcement officer could believe that he has a good faith reason to bring this to the magistrate, but you're saying that so long as, regardless of what the officer's thinking, if that's a rubber stamp, it's just, I'm signing it and walking away, even though the officer doesn't know that. Is that rubber stamp? I think it can be, and I think in this case it is, and I think it's highly problematic, particularly because in this case, when you look at the testimony of Detective Slaughter, he didn't understand even So what you had was an officer coming in and applying for a warrant who did not understand the basis of probable cause, a judge signing off on that warrant who did not understand the basis of the probable cause finding, and an individual citizen of this country whose home was entered by the government and searched for evidence when nobody understood the process that was involved in the process. Surely that does not meet the fundamental requirement of reasonableness which we expect in the Fourth Amendment context. Surely it makes us all vulnerable to searches and seizures that are approved and ratified when nobody really understands the process, and that process or this problem is easily enough to remedy. It just requires some work. I would think we'd want to deter officers from writing warrants that are grossly negligent and approaching recklessness, if not reckless, insofar as failing to contain any reference or discussion of the fundamental basis or the fundamental principle on which probable cause is found. To follow up on an earlier question, I think this was Judge Kelly's line of questioning, if he looked at the warrant based on or the application and the affidavit based on what he knew and he reached the wrong conclusion, so he thought that this was like Napster or I don't even know LimeWire or whatever these peer-to-peer networks were, is him making a mistake the same thing as rubber stamping it? In other words, if I look at an application, I don't really understand everything completely, but I think I know what happened and I understand it with that framework in mind and reach the wrong conclusion. That's not a rubber stamp. I agree with you. I think making a mistake is not acting as a rubber stamp. I think to approach acting as a rubber stamp really means to, so in that example, due consideration is given, there's just a mistake, there's an error on the part of the magistrate judge, but where there's due consideration given, thoughtful consideration given, because it might as well have been written in a foreign language, the magistrate judge, the judicial officer has a duty at that point. That duty is to say, this is not good enough. I don't understand it. Someone has got to make this clear to me so I do understand it, because you are asking me to authorize the permission to enter into the home of a person within the boundaries of this nation to search and seize for evidence of a crime. I've got to at a minimum understand the basis for your probable cause claim. So a mistake, no. But when it appears that when the affidavit itself could have been written in some foreign language you don't understand, that's simply not good enough. It doesn't matter whether Freenet is described, whether or not there's 1,000 pages of material or 10,000 pages of material that go into detail. If it's not understood, it is no different than not reading it. What is the difference between not reading something and not understanding what you read? Not a mistake, but a complete failure to understand the technical aspects of it. Not in a way that would rise to the level of the understanding of an expert in the area, but simply understanding that there's a number. That number is fundamental, and that number in this case was either matched or exceeded, and only the original requester of those files would be able to match or exceed that number. Here it was exceeded by 501%. That is all that I can arrive at that after the fact by looking at all this material. Certainly law enforcement could have done the same at the outset, given that judge sufficient information to make a probable cause finding on his own to make sure that probable cause did exist to enter the home of Mr. Dickerman. But there was a complete failure in the process to do that. The system entirely broke down. That would be something we want to deter. We simply do not want to encourage officers to do the bare minimum, to provide affidavits to magistrate judges, to not provide probable cause, maybe in the hope, maybe without care, that some magistrate judge or judicial officer simply won't understand or ratify the conclusion nonetheless. When asked about the conclusion, Judge Borbono said this. I asked if he simply accepted the conclusion that was given, and he said, or understood the foundation of the data underlying it. And he agreed that he simply accepted the conclusion that was given. That is being a rubber stamp. That is simply ratifying the work of someone else who should have shown their work and made it clear to Judge Borbono exactly what was happening. Only in that case could he perform his neutral and attached function and determine that there was an independent basis for probable cause. I will reserve my time. Ms. Lange? Thank you. May it please the Court. My name is Colleen Lange, and I am representing the United States in these proceedings today. This is a search warrant case. And like the question in many search warrant cases is, does the search warrant have probable cause? And this one does. A state court judge, a magistrate judge, and a district court judge have found that this probable cause. The district court's order should be affirmed. This is a valid search warrant that was based on probable cause to search the defendant's home for child pornography. Further, even if this court were to determine that the probable cause in this search warrant was not sufficient, the law enforcement did not act in bad faith in this case. And the officers in acting in good faith relied upon the search warrant, and therefore the evidence should still not be found. And then lastly and separately, the district court also correctly found that Judge Bourbonis did not act as a rubber stamp for the police, and he remained neutral and detached. For the appellate to prevail in this matter, he has to show that the search warrant lacks probable cause and that Judge Bourbonis acted as a rubber stamp in this matter. Now the standard for probable cause is obviously set forth in Gates, and it's whether or not there's fair probability that evidence of a how appellate characterized the search warrant. It's 24 paragraphs long. The first approximately four paragraphs lay out a background information on the two investigators that worked on the case. And earlier he was saying about how no one who's talked about in the search warrant understood it. Wayne Becker, Investigator Becker, actually developed the original way to find child pornography offenders on Freenet. And he's the one who did the investigation in this case, and then Detective Slaughter took it from there since the case was actually taking place in St. Louis County, not Dent County, where Wayne Investigator Becker is at. And then that's why I went to a St. Louis County judge. And this search warrant tells the judge that a computer at the Dickerman household is requesting a file of child pornography. That is a crime. The search warrant sets for a date of when that crime occurred on April 2nd of 2015 at approximately 11 p.m. Investigator Becker logged requests for a file of child pornography coming from an IP address. That IP address tells you the place of where this crime is taking place, the Dickerman household in St. Louis County. Where do you think that the search warrant application describes sufficiently for even a basic understanding of the difference between a requester and I think the term is a relayer in Freenet? Yes, Your Honor. So the search warrant obviously has to be taken under a whole for probable cause. And the parts that explain how Freenet works and requesters versus relayer starts in around paragraph five. That's when Investigator Becker talks about, he logs these requests and then compares them to see who is asking for known files of child pornography. And then it goes on- I'm sorry, you said paragraph five? Paragraph five, yes. That's where it starts where he talks about how he's logging these requests to determine who's asking for child pornography. Then he reviews the request to make sure that he's getting the original requester versus the relayer. And he explains that in paragraph six, that he sees Mr. Dickerman's IP address as the requester. And he knows that because the number and timing those requests are coming through, those significant enough to indicate that the IP address was the original requester of the file. Now what the appellate keeps arguing is that that paragraph is missing one thing, the math. He wants it to say a 502% even share. I believe that's what Mr. Dickerman had in this case. I don't think that that would have helped Judge Bourbonus anymore. I think that how it is described here, the number and timing of the request, and that is what is happening. Investigator Becker is looking, he is a peer on Freenet, and he is timing the requests that are coming through. The more requests, it has to be the original requester of the file versus a person who is just relaying a request because they don't have a block. And so you're describing what number and timing mean. Yes. That would be one more paragraph, not very difficult to add. Correct. Maybe it could have been added up there, but it is added later in the search warrant. Freenet and how Investigator Becker finds offenders on Freenet are then more explained in detail in paragraphs 13, 14, 15, 16, 17, all the way down to paragraph 21. And specifically in paragraph 16, they talk about how a computer running Freenet receives these requests to retrieve the data. And I know it's a little back up to paragraph, excuse me, I'm sorry, down to paragraph 21. And it's these streams of requests for these particular files that can be evaluated to determine if the IP address is the requester. Now, and as Judge Barbona said, he read the entire search warrant. And what is sort of taken out of place, and what you can't really see from the transcript of the hearing, is at the hearing two years later, he's thrown this search warrant and asked to just out of context certain little things without being, he had not, the judge had not been able to review the entire search warrant before he was questioned at length by pulling small things out of context by the appellate's attorney. Let me, oh, go ahead. No, go ahead. I just follow up on your paragraph 21 where you, I think you highlighted there as an important phrase that the affiant knows from training and experience that streams of requests for a particular file from an address can be evaluated to determine really the ultimate conclusion here, whether your requester can be evaluated. I guess that's sort of one of the questions. I think when we see other warrant applications, we don't say, well, we can determine whether this is cocaine or powder or baking soda, and it's cocaine, without saying how they did that, or we tested it, without saying we tested it and we determined that it actually contained a percentage of a controlled substance. I guess I'm kind of trying to find this line between conclusory and explanation that's going to help me understand whether this is enough. I understand, and that is what they are doing on this program, is that they are evaluating the request, and in this case, on this particular day, going back to the beginning of the affidavit, investigator Becker sees the requests coming through, and he knows based on his training and experience as being the one who first actually figured out how to find people on Freenet that are child pornography offenders, that the number and timing of the request was located at this IP address. Let me ask you this. If I'm the judge looking at this affidavit, one of the things that probably would impress me is sort of the proof in the pudding argument. I may not understand exactly how this program works, but I am going to zero in on the fact that on page two, under paragraph seven, that you have 17 JPEG images of child pornography, which sort of proves that the program is working because they came up with the images. Now your opposing counsel says there weren't 17 images. Can you enlighten us on that? Were there 17 images? Yes, there were 17 images in one file. It was a zip file that investigator Becker saw the defendant's IP address requesting, and there were in fact 17 images. It was a series of a young girl being sexually abused, so I'm not really sure what he was The file itself is what the person is requesting. When they get the file, it's not just one image, but 17 images inside one zip file. Sixty-nine blocks, though, do not make a whole file, right? That's correct. I'm not really sure why they put that in there without putting in the second number, and then also the number of peers, to make it clearer to the reader. Because exactly, the full file, I can't remember right off the top of my head how much it was, but it was probably closer to 100 or 150 blocks if they saw 69. Maybe it's not relevant to this determination, but I'm just trying to understand this program. So if you have a total of 125 or 150 blocks, but you only get 69 of them, what do you do? Do you have partial pictures, or do you have blurry pictures? What do you get when you only have half the blocks? Sure. With half the blocks, you probably wouldn't be able to view the file. So what's happening when someone puts a file into the Freenet program, the program breaks the file down into puzzle pieces. For example, if I put a file in and it broke it down into 1,000 blocks, that's like 1,000 puzzle pieces being stored all over the After I put a file into the network, I get this SHA hash value, similar to the one in the middle of page seven. It comes back up on the screen. I have to copy and paste that and save it somewhere, or put it on a free site or a message board, so I can remember what my file is. If that SHA value is not kept, the file disappears in Freenet for forever. So you keep your SHA number, and then when you want to go back and retrieve your file, you put that number actually into the program itself. Then it goes out and it says, okay, this file is 1,000 blocks. Well, I need to make 1,000 requests. And what Investigator Becker figured out is you have a certain number of peers. So if you have 10 peers and the file is 1,000 blocks, you have to make 1,000 requests. And so Wayne Becker, as the peer next door, said, oh, I should be getting 100 requests as an even share of those requests for the 1,000 block file. And that is how he did his math. And often he would see more requests, so he would have the percentage that this person is the original requester versus a relayer down the line. Because after it goes through, for example, Investigator Becker's peer, then it would go to the next person, and then that peer would only see 10 requests for that file versus 100, because it starts to decremate. Well, but I guess, going back to my original question is, how can you view the file if you only have 69 blocks and there's 150 blocks total? Oh, sure. So Wayne Becker is not actually viewing the file at this point. He's just collecting the number of requests that are coming through for the file. So he's saying, okay, I have 69 requests for these, or 69 blocks requests coming through. And I know that that means, and I know because I have this, because these blocks have SHA values, right, that are the keys, and he has those in his database. And he goes, this person is requesting these blocks make up this file of known child pornography. So at that point, Wayne can double check that that's still a known child pornography file by requesting it himself from Freenet. But he's not actually able to make up the file with 69 blocks. So he got more than 69 blocks in order to get the 17 images. Right. Wayne would have had to then confirm, and then by putting the SHA value in himself, and getting the whole file to then look at it. So you can't look at it when it's only the 69. That's just Wayne, or sorry, excuse me, Investigator Becker, seeing that these requests, 69 requests are all for, to make up this one file that might be 150. And he's recovering, it says later in the affidavit on paragraph 24, it says he knows that it's possible to recover the digital files. Is he talking about recovering the 69 blocks then that went to the computer, or what's he talking about there? No, in this part of the affidavit, they're actually just getting into how people collect and store child pornography on their computers. So what they're trying to say here is, even if they go to the house and the person's deleted the image of child pornography, they'll still be able to recover it off the computer. Okay. And on the setback to the 17 images, that's just saying that's what someone was trying to request. So the probable cause is all about whether Mr. Dickerman is the requester. Correct. Not that it was landed on his computer like a file sharing kind of situation, a typical file sharing. Right. This is sort of a bad, Breenet kind of works a little bit backwards from a typical period of year. Sort of like the affidavit. Now, as I was going through, the search warrant lays out probable cause. And there's no indication that Judge Bourbonis acted as a rubber stamp in this case. Appellate really mischaracterizes his testimony, and you have the hearing transcripts so you can go through it. He never, says he doesn't have any independent recollection of this search warrant when he testified at the hearing, but that's no surprise because it had been two years. He's a county judge who saw 20 search warrants a week. He stated if he did not understand a search warrant or did not think there was probable cause, he would refuse to sign it. He said he always reads the entire warrants. He pays particular attention to facts in the warrant. And Judge Baker, the magistrate judge, who was the judge at the hearing, in her R&R writes, fact finding, she finds Judge Bourbonis credible. And she finds that he read the warrants and that he did not abandon his role in any way. He was neutral and detached and did not act as a rubber stamp. What about opposing counsel's statement that there's a difference between reading an affidavit and understanding it? And that if you don't understand it, whether or not you read it, it's sort of insignificant. What about that? Well, I mean, I kind of agree with that theory. I don't think that's what... That is not what happened in this case. There's no indication on the record. There's no testimony from Judge Bourbonis that he said he read the search warrant, didn't understood it, but signed it anyway. There's nothing in the hearing transcript that says that. The only... There is on the whole statement about this one terminology, it's Greek to me, is around page transcript 214. And the only thing Judge Bourbonis is saying Greek to him is this thing about the 69 blocks. And if you go through the questions and answers before that, there's this whole litany between the appellate and Judge Bourbonis. And he's taking things like, oh, turn to paragraph seven and look at this. And what does this mean? And what does that mean? And the judge has just said, I've just been called to testify. I haven't seen this in two weeks. And he's pulling things out of context. And his questions aren't even... He's asking, well, how does the blocks mean that they're... How does that relate? And explain to me how that relates to 17 images. And he's not even giving the judge an opportunity to read the entire affidavit, which you do have to in this case, which the judge stated he did back in 2015. So I don't believe that the judge acted as a rubber... There is no indication that the judge acted as a rubber stamp in this case. And the other prior case laws dealing with rubber stamp, the focus is on the action of the judges. And Judge Bourbonis' conduct is nothing like the judges in Lowe, G. Sales, or even Decker. There's definitely an objectively reasonable argument here that the law enforcement acted in good faith. And if the court would find that there was not probable cause, then good faith should be the reason that the evidence is not excluded. And as I stated earlier, to prevail in this case, the appellate has to show both, that there was no probable cause in the search warrant and the judge acted as a rubber stamp. Appellate has done neither. There's probable cause in the warrant. Not only was there a date... It states that there is a date this crime happened, where it took place, how it took place, by whom... By a person at a certain address in St. Louis County, which was connected by the IP address. And it explained how Investigator Becker views these requests on Freenet to determine who is requesting child pornography on this. And requesting child pornography is a federal crime. It's attempted receipt of child pornography. The search warrant affidavit set out sufficient facts to establish there was a fair probability that child pornography would be found at Mr. Dickerman's home. And the underlying algorithm or math is not necessary for the finding of probable cause in this case. The search warrant is not based on bare conclusions. Again, it contains details of how this crime was committed. And like I said earlier, even if the search warrant affidavit is found to be insufficient by this court, it is definitely not willfully insufficient or facially deficient. And therefore, law enforcement can rely on good faith. And even if Judge Bonas stated that one of the terms was Greek to him, it does not lead to the conclusion that he abandoned his role or acted as a rubber stamp. There's no indication in the record that he did as such. And so the law enforcement's independent good faith is really not connected to the rubber stamp analysis, correct? So in other words, the law enforcement doesn't have to know that the judicial officer is going to be a rubber stamp in order for that category to apply. Is that right? Correct. In Decker, the reason that they found that was the search warrant itself was so willfully insufficient and so deficient that there was no way that the law enforcement officers could have relied on it under good faith. So really, yes, if the law enforcement officer feels that under the objectively reasonable standard that this warrant, even if it is slightly lacking in probable cause, it's still reasonable for him to rely on it. And he has no way of knowing whether or not the judge read the warrant. The officer testified he presented the warrant to the judge. The judge had no questions. It appeared that he read the entire warrant and signed off on it. And the warrant is not facially deficient. So how else would the officer know that the judge was acting as a rubber stamp? There's nothing in the record that indicates that the judge in this case was acting to collude with the police or leaving his neutral and detached role, becoming a police officer in a row. And that we would request that you affirm the district court's findings. There's no further questions. Thank you. Very quickly, what matters isn't what Detective Becker or Detective Slaughter knew, but what they showed to the magistrate judge. So the magistrate judge, the judicial officer, could make his own independent evaluation of what was known to law enforcement. Second, there were 783 blocks that comprised the file that we're discussing today. Third, the government says there was no indication of rubber stamping. If I could, in 30 seconds, just read something from the transcript. This runs from page 217 to page 219. Question, okay, do you understand the relationship between the 69 blocks and the 17 images? No. Answer, again, I can tell me you, on this paragraph, it's probably the portion under description which meant something to me. The rest of it might as well have been written in Greek. Question, okay. Answer, because I don't understand what blocks are or how the JPEG image files are related to the blocks or anything like that. All right. Answer, but what I did take from this paragraph was that 17 images of what appeared to be child pornography were discovered. Right, and you took the question, right, and you took that as it was written. Answer, correct. Question, I mean, there's a conclusion and you accepted that conclusion, but the foundation, the data underlying that conclusion was Greek to you. Answer, correct. And what we know, without a doubt, the 17 files were not discovered. You've heard that from the government a moment ago. What was discovered is that Mr. Dickerman's IP address was associated with 69 requests for blocks on a specific date at a specific time, as were the IP addresses of all sorts of other users. The question is, how many people were using Freenet at that time? How many of those people were requesting those same blocks at that same time? And how many blocks comprised the total file? Only with that information could you determine if there was probable cause to believe that Mr. Dickerman was the original requester. That is the issue. That's what Judge Warburn has had to review. No one gave him the opportunity to do it. He didn't take the opportunity. Instead, he simply ratified the conclusions of others. I'd ask this court to reverse, remand, enter an order instructing the district court to bring up the motions. Thank you, counsel. Thank you both, counsel, and Mr. Fine in particular. We appreciate your accepting this appointment under the CJA Act. Anna. If I could thank Ms. Emily Denker Feldman, who is here and did an awful lot of work on Mr. Dickerman's behalf. You may. Thank you both. We will take it under advisement. It's an interesting case and we will issue an opinion in due course.